UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ODYSSEY MARINE EXPLORATION, INC.,

    Plaintiff,

v.                                        CASE NO: 8:08-cv-1044-T-23MAP

UNIDENTIFIED, WRECKED, AND
ABANDONED SAILING VESSEL,

    Defendant.

_____/

## ORDER

The plaintiff, Odyssey Marine Exploration, Inc., recovers artifacts from sunken wrecks. In this case, the plaintiff seeks title to artifacts recovered from Le Marquis Tournay, a French vessel that sank in the English Channel in the late eighteenth century. (Doc. 28 at 2) The plaintiff believes that English privateers owned Le Marquis Tournay at the time of the ship's demise. (Doc. 28 at 2) The wreck, which includes cannon and other valuable artifacts, rests on the floor of the English Channel, at less than 200 meters beneath the surface, and within a five-nautical-mile radius from centerpoint coordinates 49° 46' N., 3° 31' W. (Doc. 1 at 2; Doc. 28-1 at 2) The wreck lies "beyond the territorial waters or contiguous zone of any sovereign nation." (Doc. 1 at 2)

The plaintiff tendered a brick from the wreck as evidence of "symbolic possession," the clerk issued a warrant of arrest in rem, and the plaintiff published notice of the find in The Tampa Tribune and The Times of London. (Doc. 28 at 2) The

published notice identifies the wreck as Le Marquis Tournay but withholds the location of the wreck. (Doc. 17)  The clerk entered a default on June 30, 2009. (Doc. 21)  The plaintiff moved (Doc. 23) for default judgment, and a December 30, 2009, order (Doc. 24) denies the motion for failure to include the coordinates of the wreck.  A February 11, 2010, order (Doc. 26) denies the plaintiff's motion to submit the wreck's coordinates under seal.

The plaintiff renews the motion for default judgment and seeks "title and ownership in the artifacts it has recovered, and those it will recover, from the defendant wreck site." (Doc. 28 at 7)  The motion asserts that the plaintiff recovered from the wreck a shard of glass, a ship's bell, and a piece of sheething. (Doc. 28 Ex. B)  Although the motion includes a blurry picture of a fourth artifact, no description accompanies the picture. (Doc. 28 Ex. B)

### Discussion

The plaintiff requests under the law of finds a default judgment awarding to the plaintiff title to the wreck. (Doc. 28)  Although admiralty law prefers the law of salvage to the law of finds, the law of finds governs the recovery of a long-abandoned wreck.  As is typical in admiralty cases, the plaintiff's claim proceeds in rem against the wreck.  In rem jurisdiction requires the presence of the entire res within the territorial jurisdiction of the court.  However, the plaintiff seeks title both to the recovered artifacts and to the artifacts that the plaintiff "will recover" from the floor of the English Channel.  Because possession of the recovered artifacts bestows jurisdiction to adjudicate title to those artifacts, the plaintiff fails to establish in rem jurisdiction to adjudicate title to the artifacts

on the floor of the English Channel, which artifacts remain outside the territorial jurisdiction of the this court.

### I. The Law of Finds and the Law of Salvage

Both the law of salvage and the law of finds apply to the recovery of property lost at sea.  "Under the law of salvage, rescuers take possession of, but not title to, the distressed vessel and its contents" and realize a compensatory salvage award. International Aircraft Recovery, L.L.C. v. Unidentified, Wrecked & Abandoned Aircraft, 218 F.3d 1255, 1258 (11th Cir. 2004).  The law of finds, in contrast, is "summed up succinctly as 'finders keepers.'"  218 F.3d at 1258.  The law of salvage and the law of finds "serve different purposes and promote different behaviors," and a claimant cannot "have its cake and eat it too" by invoking both during a single recovery.  R.M.S. Titanic, Inc. v. The Wrecked & Abandoned Vessel, 435 F.3d 521, 531, 535 (4th Cir. 2006) ("Titanic III").

### A. The Law of Salvage

Traceable to antiquity, the law of salvage rewards the voluntary rescue of imperiled property at sea—a result "utterly at variance with terrene common law." Martin J. Norris, 3A Benedict on Admiralty 1-1 (2009).  The law of salvage functions as a trust on behalf of the true owner and "imposes duties of good faith, honesty, and diligence in protecting the property in [the] salvors' care."  171 F.3d at 964.  A salvor removes property from a wreck in trust for the owner; exploitation of the salvaged property terminates the right to a salvage award.  171 F.3d at 964.

After recovering lost property, the salvor obtains a maritime lien that allows the salvor to proceed <u>in rem</u> to secure a salvage award. <u>The Sabine</u>, 101 U.S. 384, 386 (1879); <u>R.M.S. Titanic, Inc. v. Haver</u>, 171 F.3d 943, 963 (4th Cir. 1999) ("Titanic I"). The salvor also gains exclusive "possession" over the salvaged property to allow for the uninterrupted delivery of the property to the court-appointed custodian. <u>See</u> <u>Titanic I</u>, 171 F.3d at 966. The value of the recovered property governs the salvage award, and, if the salvage award exceeds the value of the salvaged property, the salvor receives title to the property. <u>See</u> 3A <u>Benedict on Admiralty</u> § 228; <u>Titanic I</u>, 171 F.3d at 963.

### B. The Law of Finds

The law of finds allows a finder to acquire title to abandoned property by "reduc[ing] the property to his or her possession." <u>Klein v. Unidentified Wrecked & Abandoned Sailing Vessel</u>, 758 F.2d 1511, 1514 (11th Cir. 1985). Unlike the law of salvage, the law of finds imposes no trust on the finder, who acquires the property for his own benefit. "To establish a claim under the law of finds, a finder must show (1) intent to reduce property to possession, (2) actual or constructive possession of the property, and (3) that the property is either unowned or abandoned." <u>Titanic III</u>, 435 F.3d at 532 n.3. The finder of abandoned property cannot exclude others from attempting to reduce discovered property to possession. <u>Titanic III</u>, 435 F.3d at 534-35. Unlike the law of salvage, an ancient part of the <u>jus gentium</u>, the law of finds is a "disfavored common-law doctrine incorporated into admiralty but only rarely applied." <u>Titanic III</u>, 435 F.3d at 532. Because the law of salvage presumes that property lost at sea is not "abandoned" (and thus the true owner retains title to the lost property), the

law of finds traditionally applies only to objects (such as flora and fauna) never owned. 435 F.3d at 532.

However, the law of finds governs the recovery of an abandoned historical wreck. International Aircraft Recovery, 218 F.3d at 1258.  In Treasure Salvors I, the plaintiff asserted title to the discovered wreck of the Spanish frigate Nuestra Señora de Atocha, which sank off the Florida Keys in 1622 while carrying precious metals from the new world.  569 F.2d at 333.  Treasure Salvors I concludes that "[d]isposition of a wrecked vessel whose very location has been lost for centuries as though its owner were still in existence stretches a fiction to absurd lengths."  569 F.2d at 337; see also Klein 758 F.2d at 1512-14 (holding that the law of finds rather than the law of salvage applies to the recovery of a two-hundred-year-old wreck privately owned at its sinking). Accordingly, Treasure Salvors I holds that the law of finds applies to an abandoned wreck.

### C. The Law of Finds Applies in the Present Case

Under Treasure Salvors I, the law of finds governs the plaintiff's claim.  The plaintiff believes that the res sank more than two hundred years ago, and no owner claims the wreck.  If the plaintiff correctly identifies the ship, the original owners were private citizens who passed away more than two centuries ago.  Therefore, the plaintiff correctly asserts that the law of finds governs this claim.

## II. Jurisdiction

"[T]he entry of a default judgment is not automatic, and . . . a court should satisfy itself that it has personal jurisdiction before entering judgment against an absent defendant." Mwani v. bin Laden, 417 F.3d 1, 6 (D.C. Cir. 2006). The plaintiff must provide only a prima facie showing of personal jurisdiction. 417 F.3d at 6. Generally, in rem jurisdiction "derives entirely from [the court's] control over the defendant res." United States v. One Lear Jet Aircraft, Serial No. 35A-280, Registration No. YN-BVO, 836 F.2d 1571, 1573 (11th Cir. 1998). By controlling the res, a court declares rights in the res against the world. Titanic I, 171 F.3d at 964. In this case, jurisdiction extends to the recovered artifacts listed in Exhibit B of the plaintiff's amended motion for default judgment. (Doc. 28)  However, jurisdiction fails to extend to the artifacts on the floor of the English Channel (despite the plaintiff's assurances that those artifacts eventually will arrive in this jurisdiction).

### A. The Artifacts in the United States

Exhibit B of the motion (Doc. 28) for default judgment lists a shard of glass, a piece of sheething, and a ship's bell as the artifacts that the plaintiff recovered and transported to the United States. A June 19, 2008, order (Doc. 10) appoints the plaintiff as the substitute custodian of the res. Therefore, in rem jurisdiction attaches to the artifacts the plaintiff recovered and brought to the United States, which jurisdiction enables an adjudication of the plaintiff's title to these artifacts. Accordingly, the plaintiff's motion (Doc. 28) for default judgment is **GRANTED** to the extent that the plaintiff is awarded title under the law of finds to the shard of glass, the piece of sheething, and the ship's bell.

### B. The Artifacts on the Floor of the English Channel

In rem jurisdiction fails to extend to the artifacts that remain in international water, and this want of jurisdiction prevents an adjudication in rem. If justice requires a judgment, however, "rigid legalisms" should not defeat jurisdiction. Treasure Salvors I, 569 F.2d at 334. To avoid "rigid legalism," the law of salvage permits the exercise of in rem jurisdiction by constructive possession, even if the court possesses only a portion of the total res. Titanic I, 171 F.3d at 964. Relying on the "legal fiction" that the res remains undivided, in rem jurisdiction by constructive possession derives from the practical impossibility of delivering the entire res into the actual possession of the custodian. 171 F.3d at 964. Normally, however, in rem jurisdiction by constructive possession attaches only if the entire res is located within the territorial jurisdiction of the forum. 171 F.3d at 964.

As stated in Section 6 of Restatement (Second) of Judgments (1982), "A state may exercise jurisdiction to determine interests in a thing if the relationship of the thing to the state is such that the exercise of jurisdiction is reasonable." Odyssey Marine Exploration, Inc. v. Unidentified Shipwrecked Vessel, 675 F. Supp. 2d 1126, 1132-33 (M.D. Fla. 2009) ("Odyssey I"), involves the recovery of thousands of coins from a sunken Spanish navy vessel, Nuestra Señora de las Mercedes, which departed Peru in 1804 and sank in international water after a conflict with British warships. Although holding that the Foreign Sovereign Immunities Act defeats subject matter jurisdiction, Odyssey I questions the exercise of in rem jurisdiction outside the territorial boundary of the United States. See 675 F. Supp. 2d at 1137. In exercising extra-territorial jurisdiction, "a court must be sensitive to the principle of international comity[,] . . . as the

- 7 -

application of international law evokes a sense not only of discretion and courtesy but also of obligation among sovereign states. . . . [T]he court's perspective is guided by reasonableness."  675 F. Supp. 2d. at 1137.

To avoid an unreasonable constraint on in rem jurisdiction, admiralty law recognizes two exceptions to the requirement that the res remain within the territorial jurisdiction.  The first exception, established in the litigation over the wreck of Nuestra Señora de Atocha, allows the exercise of "quasi in rem jurisdiction" over the res to adjudicate rights among parties over which the court enjoys in personam jurisdiction (even though the res is outside the territorial jurisdiction of the court).  The second exception, established in the litigation over the RMS Titanic, extends in rem jurisdiction by constructive possession and allows the declaration of an exclusive right to salvage a wreck in international water.  The plaintiff concedes that the wreck remains outside the territorial jurisdiction of this court; indeed the wreck lies "beyond the territorial waters or contiguous zone of any sovereign nation." (Doc. 1 at 2)  Nevertheless, the plaintiff seeks the exercise of "constructive quasi in rem jurisdiction," (Doc. 1) a species of jurisdiction that appears nowhere in American or international law and would require a novel and uncomfortable combination of the two recognized exceptions to the admiralty rule requiring control of the res before exercising jurisdiction.  Because neither exception applies to an attempt to acquire title under the law of finds and by uncontested default judgment, the plaintiff's proposal for an ad hoc, hybrid jurisdiction unsupported by precedent or logic fails from the start.

### i. "Quasi In Rem Jurisdiction"

<u>Treasure Salvors I</u> establishes "<u>quasi in rem</u> jurisdiction"[1] to adjudicate competing rights to a historical wreck in international water.[2]  In <u>Treasure Salvors I</u>, the United States contested a salvor's attempt to gain title to the wreck of the <u>Atocha</u>, which rested partially outside the territorial water of the United States.  <u>Treasure Salvors I</u> concludes that no <u>in rem</u> claim absolutely requires the presence in the district of the <u>res</u>. 569 F.2d at 334.  Describing admiralty <u>in rem</u> procedure as a legal fiction of convenience, <u>Treasure Salvors I</u> concludes that precedent fails to support a rule preventing justice by "automatistic reliance upon rigid legalisms."  569 F.2d at 334.  The resolution of competing rights of ownership in a wreck does not require the arrest of the vessel.  569 F.2d at 335. Jurisdiction attaches, regardless of the location of the <u>res</u>, if the contesting parties are subject to <u>in personam</u> jurisdiction in the forum.  <u>See</u> 569 F.2d at 335.  As stated in <u>Treasure Salvors, Inc. v. Unidentified Wrecked & Abandoned Sailing Vessel</u>, 640 F.2d at 560, 567-68 (5th Cir. 1981) ("<u>Treasure Salvors III</u>"), also concerning the recovery of the <u>Atocha</u>:

> The fact that the property which is the subject of the salvage effort is not within the territorial jurisdiction of the court, and thus not subject to an <u>in rem</u> decree, is irrelevant [to the adjudication of competing salvage rights].

---

[1] "<u>Quasi in rem</u> jurisdiction" describes two different jurisdictional mechanisms. Restatement (Second) of Judgments § 6 cmt. (a) (1982).  The first allows adjudication of a contest over ownership of the <u>res</u>, regardless of the location of the <u>res</u>.  The second, either garnishment or attachment, allows prosecution of a claim against the property of a party even without <u>in personam</u> jurisdiction.  In contrast with <u>in rem</u> jurisdiction, either type of <u>quasi in rem</u> jurisdiction permits adjudication of rights between the parties rather than against the world. This action involves only the first type of <u>quasi in rem</u> jurisdiction.

[2] Misconstruing and unreasonably extending <u>Treasure Salvors I</u>, several courts have purported to exercise <u>quasi in rem</u> jurisdiction to adjudicate rights to a historical wreck in international water.  <u>See</u>, <u>e.g.</u>, <u>Moyer v. Wrecked & Abandoned Vessel, known as Andrea Doria</u>, 836 F. Supp. 1099, 1104 (D.N.J. 1993); <u>Marex Int'l, Inc. v. Unidentified, Wrecked & Abandoned Vessel</u>, 952 F. Supp. 825 (S.D. Ga. 1997).  None of these cases convincingly supports the unbounded exercise of jurisdiction proposed by the plaintiff.

- 9 -

> Although rights to the vessel may be the subject of the dispute, the adverse parties in this situation are the competing salvors. [Because] the court has jurisdiction over them, and the subject matter involves claims based on the maritime law of salvage and of finds, the court is fully competent to adjudicate the dispute regardless of the location of the salvage operations.

However, the Fifth Circuit observes (and the plaintiff ignores) an important caveat to the exercise of quasi in rem jurisdiction.  If a court exercises personal jurisdiction over the parties but not jurisdiction over the res, the court adjudicates rights only between the parties to the dispute.  The district court in Treasure Salvors I awarded the salvors title to the wreck and enjoined "the United States and all other claimants" from interfering with the salvors' "lawful exercise of their right to possession or of their salvage rights in the vessel . . . ." 569 F.2d at 336 n.8.  The Fifth Circuit expressly limited the injunction to only the parties to the litigation.  569 F.2d at 335-36.  Treasure Salvors I grants the salvors title to the artifacts held by the custodian but awards only against the United States title to property outside the territorial jurisdiction.  569 F.2d at 335-36.  In sum, quasi in rem jurisdiction permits a determination of rights between the parties to the litigation; the court cannot adjudicate the rights of an absent third party over whom the court enjoys no jurisdiction.

The plaintiff asserts that "this Court has, or will have during the pendency of this action, jurisdiction over any potential claimant or competing salvor by virtue of its contacts with this forum; the nature of the Plaintiff's admiralty action; the relationship of the potential claimant and/or salvor to the Plaintiff, the forum, and the cause of action; and/or the principles of jurisdiction by necessity." (Doc. 1 at 4-5)  However, any exercise of jurisdiction that allows a declaration of rights against a future claimant

- 10 -

operates identically to an ordinary in rem claim, and an ordinary in rem claim requires the presence of the res within the territorial jurisdiction. The plaintiff's optimistic conjecture about a future claimant manifestly fails to support the exercise of quasi in rem jurisdiction.

### ii. Constructive In Rem Jurisdiction

"Constructive in rem jurisdiction" allows the enforcement of an exclusive right to salvage a wreck in international water by expanding the traditional notion of in rem jurisdiction by constructive possession. See Titanic I, 171 F.3d at 964, 967-68. Titanic I reasons that the law of salvage, as part of the jus gentium, creates a "shared sovereignty" among nations enforcing the jus gentium. This "shared sovereignty" allows the declaration of an exclusive right to salvage a wreck outside the territorial jurisdiction. 171 F.3d at 967-68. Nevertheless, enforcement of an exclusive right to salvage in international water depends on the eventual arrival of the person or property at issue within the territorial jurisdiction. 171 F.3d at 968-69.

Titanic I's rationale for constructive in rem jurisdiction depends on international acceptance and enforcement of the law of salvage. "In stark contrast to the nature and purpose of salvage law, which is an ancient and time-honored part of the maritime jus gentium, the law of finds is a disfavored common-law doctrine incorporated into admiralty but only rarely applied." Titanic III, 435 F.3d at 532; see also Klein, 758 F.2d at 1513-14 (sharply distinguishing the "common law of finds" from maritime law). The law of salvage applies only at sea and directly contradicts the common law, which grants no award for the voluntary recovery of another person's property. Martin J. Norris, 3A Benedict on Admiralty 1-1 (2009). In contrast, the law of finds in admiralty

- 11 -

traditionally reached only natural objects (such as flora and fauna) lacking an owner. Titanic III, 435 F.3d at 532. The law of finds applies a doctrine of common law to the seas in narrow, defined circumstances; the law of salvage is exclusively the law of the sea. Titanic III, 435 F.3d at 532.  Therefore, the law of finds fails to enjoy the universal acceptance necessary to qualify as a part of the jus gentium, and the absence of the "shared sovereignty" of the jus gentium scuttles any application of the Titanic I rationale to a claim governed by the law of finds.

Under the law of finds, "[a] finder cannot exclude others from their attempts to obtain first possession of artifacts recovered from an abandoned wreck." Titanic III, 435 F.3d at 535.  In contrast, the law of salvage grants exclusive possession to ensure that the salvor recovers the owner's property intact, and this need supports the exercise of extra-territorial jurisdiction.  See Titanic III, 435 F.3d at 534-35.  In other words, the law of salvage encourages the recovery of property for the benefit of the owner.  A declaration granting an exclusive right to salvage the res allows the salvor to perform his duty as trustee of the owner's property; competition from other salvors might damage the property and prevent the salvor from fulfilling his duty.  See 435 F.3d at 532. On the other hand, the law of finds encourages acquisition for the benefit of the finder.  Because a finder acquires title for himself, the finder generally needs no additional incentive to recover lost property.  Applying exclusively to the law of salvage in international water, constructive in rem jurisdiction fails in this action under the law of finds to support the exercise of jurisdiction over abandoned property on the floor of the English Channel.

### iii. The Plaintiff Fails to Justify Expanding Admiralty In Rem Jurisdiction

Although admiralty in rem jurisdiction requires the presence of the entire res within a court's territorial jurisdiction, the plaintiff argues that one of these exceptions (or perhaps some combination of the two exceptions) applies to an uncontested default judgment under the law of finds. Neither exception applies to the plaintiff's action. Therefore, the plaintiff apparently asks for an expansion of admiralty in rem jurisdiction "by necessity." (Doc. 1 at 5) However, the plaintiff's proposal for broad protection of mere finders encourages pillaging the seabed and fails to justify the expansion of extra-territorial jurisdiction.

No substantial benefit accrues from an expanded extra-territorial jurisdiction that allows a court to grant exclusive title to a wreck in international water on an unopposed default judgment. The law of finds permits the plaintiff to secure title to any previously abandoned find by transporting the find within the territorial jurisdiction of the court. If another salvor (subject to in personam jurisdiction) unlawfully interferes with property that the plaintiff possesses, the plaintiff can employ the quasi in rem jurisdiction used in Treasure Salvors I. If the court cannot exercise in personam jurisdiction over a competing salvor in possession of the plaintiff's rightful property and the property remains outside the territorial jurisdiction of the court, a declaration of title proves useless. The court cannot force a competing salvor to return the plaintiff's rightful property without in personam jurisdiction over the competing salvor or actual control of the property.

A number of risks accompany an award of title to an uncontested wreck in international water, and these risks counsel against an expansion of admiralty in rem

- 13 -

jurisdiction. If a competing salvor attempts to gain title to the same wreck in a foreign court, each court faces sensitive issues of comity. Additionally, a wreck outside the territorial water of the United States is more likely to belong to a foreign state. As Odyssey I demonstrates, if a wreck is the property of a foreign state, the federal court lacks subject matter jurisdiction to adjudicate the rights of a sovereign. See 675 F. Supp. 2d at 1145. The award of title to a conspicuous wreck in international water implicates United States foreign policy, constitutionally committed to the executive branch of government.

Furthermore, the plaintiff's requested judgment is both unbounded and unprecedented. The plaintiff requests title to everything found on seventy-five square miles of sea floor beneath an ancient shipping route. The proposed default judgment offers neither a temporal limitation nor a procedural constraint on the plaintiff's claiming title to any artifact (whenever deposited) found within the claimed area. For example, if, sometime in the next fifty or a hundred years, a British commercial ship or a Russian commercial satellite sinks within five miles of Le Marquis Tournay, the plaintiff could use the default judgment in this case to assert title to the sunken (but certainly not abandoned) property. Similarly, if the plaintiff discovers another ancient wreck (or more, valuable artifacts from the Le Marquis Tournay) within the pertinent area, the plaintiff will claim title without affording prospective owners any notice of the find. In return for salvaging a shard of glass, a piece of sheething, and a bell, the plaintiff effectively seeks a perpetual and monopolistic right to salvage property from a defined area of the sea floor below an ancient shipping route. The plaintiff offers no justification for such an expansive and mischievous exercise of admiralty jurisdiction.

Finally, the lack of an opposing party creates an uncomfortable dependence on the plaintiff's unexamined factual allegations. The unexplored allegations of the plaintiff offer assurance neither that the named wreck (and only the named wreck) lies within the area described in the complaint nor that the plaintiff correctly identifies the wreck and its owner. An opposing party might prevent an ill-advised award of title by the discovery of facts germane to a proper adjudication.

<u>Conclusion</u>

The plaintiff's amended motion for default judgment (Doc. 28) is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** as to the artifacts already within the territorial jurisdiction of this court, and the plaintiff is awarded title to the shard of glass, the ship's bell, and the piece of sheething described in Exhibit B to the motion. To the extent that the plaintiff requests title to all artifacts the plaintiff "will recover" from a wreck site covering a five-mile radius on the floor of the English Channel, the motion is **DENIED.** The plaintiff can secure title under the law of finds only after bringing the artifacts within the territorial jurisdiction.

Finally, "[a] would-be finder should be expected to act acquisitively, to express a will to own by acts designed to establish the high degree of control required for a finding of possession." <u>Hener v. United States</u>, 525 F. Supp. 350, 356 (S.D.N.Y. 1981). The plaintiff's motion (Doc. 3 at 4) for issuance of a warrant <u>in rem</u> asserts that the plaintiff "invested substantial[] money and effort in locating, surveying, photographing and researching the history of the Unidentified Shipwrecked Vessel and in planning and conducting the physical recovery of artifacts from the Unidentified Shipwrecked Vessel." However, the record lacks any indication that the plaintiff has exercised control over the

wreck beyond discovering the wreck and recovering the few items to which this order adjudicates title.  Accordingly, the warrant of arrest (Doc. 11) is **VACATED**.  The Clerk is directed to (1) enter judgment awarding the plaintiff clear title to the shard of glass, the ship's bell, and the piece of sheething described in Exhibit B (Doc. 28-2) to the motion for default judgment, (2) terminate any pending motion, and (3) close the case.

ORDERED in Tampa, Florida, on July 30, 2010.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE